TUCKER *v.* DAVIS.

4-8410                                        208 S. W. 2d 1003

Opinion delivered March 8, 1948.

*Jay M. Roland* and *Ernest Maner,* for appellant.

*C. T. Cotham* and *J. H. Lookadoo,* for appellee.

Smith, J. Appellant, Mrs. Tucker, seeks by this suit to have canceled a quit claim deed executed by her on May 28, 1945, to appellee, Mrs. Davis, on the ground that she was mentally incapacitated on account of illness, to execute the deed at the time of its execution. Her suit was dismissed as being without equity, and from that decree is this appeal.

There are many conflicts in the testimony, but that credited by the chancellor, as reflected by the decree rendered, was to the following effect. The property in question, a lot in the City of Hot Springs, referred to as the Belding property, was conveyed by deed, dated June 14, 1940, from the widow and heirs at law of Oscar Davis, to Mrs. Davis, appellee, and R. G. Tucker, for the recited consideration of $3,600 cash in hand paid. Notwithstanding some conflict in the testimony we think the fact was

clearly established that the entire consideration was paid by Mrs. Davis. The nature and extent of Tucker's interest, and the manner of its acquisition will presently be stated.

On June 28, 1940, for the recited consideration of $10, Mrs. Davis executed a quit claim deed to Tucker for the property, in which it was recited that "This conveyance is executed with the reservation to the grantor herein of a life estate in and to said property, coupled with the right to the grantor to occupy the residence found on said property so long as she survives." The effect of these two conveyances was to put the record title to the lot in Tucker, subject to the reserved estate.

Tucker had married Mrs. Davis' niece, appellant here, and had built a cottage at Kirby, Arkansas. Mrs. Davis made certain contributions to the erection of this building, the amount of which is disputed, but, we think unimportant, and she had lived with the Tuckers in this house as a member of the family for about seven months. Mrs. Davis bought a home in Hot Springs, referred to as the Oaklawn property, and established her home there, and the Tuckers lived there with Mrs. Davis for about two years, when Mrs. Davis bought the property here in question, which was conveyed to her and Tucker by the deed hereinbefore referred to. Mrs. Davis testified that she bought and paid for this property, and had the deed made to herself and Tucker pursuant to the following understanding. The Tuckers were to live in the house with her, and agreed to take care of her. Mrs. Davis is of advanced age and apparently Mrs. Tucker was her nearest relative. At first they all lived together as a single family, but the building was converted into a duplex and thereafter separate households were maintained. The testimony is conflicting as to how and in what proportion the household expenses were paid, but is not reviewed as we do not regard it as being of controlling importance.

Tucker and his wife became estranged, and were divorced and a property settlement was affected, the details of which are not clear, but eventuated in Tucker

executing to Mrs. Tucker a quit claim deed dated April 10, 1945, conveying the property in question. This deed contained the recital that "it being understood that Mollie Davis has a life estate in one-half of the above described property, and that this deed is made subject to that life estate." Mrs. Davis was advised of this deed and apparently consented to its execution. Mrs. Davis and Mrs. Tucker continued to live in the house, and are even now living in it apparently in harmony, until Mrs. Tucker's son was discharged from the army and returned home, after the execution of the deed here sought to be canceled. After returning home Mrs. Tucker's son demanded that Mrs. Davis reconvey the property to his mother and when that demand was refused this suit was brought to cancel the deed.

It is insisted, and we think established by the testimony, that this son is responsible for this litigation, as Mrs. Tucker's right to occupy the home had not been questioned and she is now living in it apparently without objection. Mrs. Davis testified that Mrs. Tucker never questioned the fact that she, Mrs. Davis, was in fact the owner of the property prior to the return of Mrs. Tucker's son, as she had paid the entire consideration of $3,600 for the lot with her own money.

Mrs. Davis testified that when she consented that the deed from the Oscar Davis heirs be made to herself and Mr. Tucker jointly, Mr. Tucker agreed that he would sell his house at Kirby and apply the proceeds of the sale to the part payment of the property here in question referred to as the Belding property, but that he did not apply any of the proceeds of the sale of his property to the agreed purpose. She further testified that in part consideration of having the deed to the Belding property made to her and Tucker jointly, Tucker agreed to take care of her and the property, but failed to perform his agreement. Mrs. Davis told her niece that as Mr. Tucker "had deserted them" the property should be restored to her, and that Mrs. Tucker acquiesced in this view as the proper thing to do. This deed from Mrs. Tucker to Mrs. Davis recited that it was executed "for and in consideration of the sum of one dollar and other considerations."

The testimony in regard to the one dollar is to the effect Mrs. Davis tendered .Mrs. Tucker a dollar, which Mrs. Tucker refused to accept, and Mrs. Davis then put the dollar in Mrs. Tucker's handbag and it was never returned; but the dollar was not the only consideration.

The contention that Mrs. Tucker lacked the capacity to execute the deed is very conflicting, but is supported by the testimony of her son and his wife, and her pastor and his wife, but is opposed by that of two ladies, neighbors and friends of Mrs. Tucker who had known Mrs. Tucker for a number of years, and at the time of the execution of the deed, and according to their testimony Mrs. Tucker was in full possession of her mental faculties, although she was a sick woman, about the time the deed was executed.

There are certain circumstances which strongly support the Chancellor's finding that Mrs. Tucker was not mentally incompetent when she made the deed. One of these is that the suit was not filed until August 30, 1946, which was a year and three months after the execution of the deed, and was after the return of Mrs. Tucker's son, until which time Mrs. Tucker made no complaint about the deed. Mrs. Tucker's testimony as to the involved transaction relating to this title shows a clear comprehension of the details, although she testified that she did not realize the effect of her deed. However, she did not deny that she knew she was signing and had signed a deed. The notary who took the acknowledgment testified that before doing so he asked Mrs. Tucker if she knew what she was signing, and she stated that she. did, and that while she was sick and in bed he had no reason to believe that she was not fully aware of what she was doing. Mrs. Tucker testified that at the time she signed the deed she was under the medical care of a Dr. Benedict, and after all the testimony had been taken the request was made that the submission be postponed until this doctor's testimony was taken, and the submission was postponed for that purpose. It is said, and not denied, that the doctor's deposition was taken, but it was not offered in evidence.

It was not shown that Mrs. Davis threatened to file suit to cancel the deed whereby Mr. Tucker claimed title, on account of his failure to apply the proceeds of the sale of his Kirby property to the part payment of the purchase price of the lot paid the widow and heirs of Oscar Davis, or because of his failure to take care of Mrs. Davis, but it clearly appears that he did not perform his agreement in either respect. It was for these reasons that Mrs. Davis told her niece that the property should be reconveyed to her. Mrs. Davis had bought the property and paid for it, and for a number of years had provided shelter for the Tuckers and Mrs. Tucker continues to reside with Mrs. Davis.

The deed from Mrs. Tucker to Mrs. Davis recited that it was executed "for and in consideration of one dollar and other considerations" and when asked what the other considerations were, Mrs. Davis answered "it just means that she had a home to stay in." This being true Mrs. Tucker has the right to occupy this property in conjunction with Mrs. Davis, not as a matter of favor, but of contractual right.

The deed from Mrs. Davis to Tucker recites that "This conveyance is executed with the reservation to the grantor herein of a life estate in and to said property, coupled with the right of the grantor to occupy the residence found on said property, so long as she survives."

Mrs. Davis therefore had the right of occupancy before Mrs. Tucker executed the deed here sought to be canceled, as long as she lived, so that whatever the state of Mrs. Tucker's health may have been when the deed from her was executed, it cannot be said that the deed was without a valid and legally sufficient consideration.

The decree will therefore be modified to the extent of recognizing Mrs. Tucker's right to joint personal occupancy, and the cause will be remanded for that purpose. An error was made in the description of the lot by beginning the description by metes and bounds at the northeast corner of the lot, when the northwest corner should have been the point of beginning of this description. It is not questioned that this error was made, and

as it was obvious that the deed was intended to describe the Belding property, the decree ordered the description to be corrected accordingly. There was no error in doing this.

The effect of the views here expressed is that Mrs. Davis has the title to this lot and the decree so adjudging is affirmed, but she has this title subject to the right of joint personal occupancy by Mrs. Tucker.

The decree from which is this appeal recites that all costs have been paid, and for that reason no judgment for costs was awarded and that holding will be affirmed. The costs of the appeal will be divided equally between appellant and appellee.